PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

AFZAL HUSSAIN,

*Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,

*Respondent.*

No. 05-2350

On Petition for Review of an Order
of the Board of Immigration Appeals.
(A76-595-607)

Argued: September 19, 2006

Decided: February 16, 2007

Before NIEMEYER, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Henry F. FLOYD, United States District Judge
for the District of South Carolina, sitting by designation.

Petition denied by published opinion. Judge Floyd wrote the majority
opinion, in which Judge Niemeyer concurred. Senior Judge Hamilton
wrote a dissenting opinion.

## COUNSEL

**ARGUED:** Jennifer Sheethel Varughese, Herndon, Virginia, for Peti-
tioner. Ernesto Horacio Molina, II, UNITED STATES DEPART-
MENT OF JUSTICE, Washington, D.C., for Respondent. **ON**

**BRIEF:** Joe W. Nesari, LAW OFFICES OF J. W. NESARI, L.L.C., Herndon, Virginia, for Petitioner. Peter D. Keisler, Assistant Attorney General, Civil Division, M. Jocelyn Lopez Wright, Assistant Director, Office of Immigration Litigation, Song E. Park, Office of Immigration Litigation, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

---

**OPINION**

FLOYD, District Judge:

Afzal Hussain, a native and citizen of Pakistan, petitions this Court for review of an order of the Board of Immigration Appeals (Board) denying his appeal from the immigration judge's order which denied his motion to reopen and disposed of his motion to remand. Hussain's only challenge is to the denial of his motion to remand. For the reasons set forth below, we deny the petition for review.

I.

On December 6, 2000, a notice to appear was issued to Hussain, alleging that he entered the United States at an unknown location on or about April 1992. (J.A. at 5.) The notice further averred that Hussain was not admitted or paroled after inspection, nor did he have any valid reentry documents. *Id.*

On October 3, 2002, the immigration judge denied Hussain's request for relief from removal in absentia. (J.A. at 23.) On January 26, 2005, more than two years after the immigration judge's order, Hussain filed a motion to reopen with the immigration judge. (J.A. at 31-58.) Hussain claimed that 1) the in absentia removal order should be rescinded because his failure to appear at the hearing was due to exceptional circumstances; 2) the denial of relief under the Violence Against Women Act, in which he claimed that he was abused by his first wife, was in error; and 3) he was now eligible for adjustment of status to that of a lawful permanent resident on the basis of a labor certification filed on his behalf by his employer on April 24, 2001. (J.A. at 31-58.)

The immigration judge denied the motion to reopen for the reasons stated in the Department of Homeland Security's (DHS) response. (J.A. at 178.) The DHS had argued that Hussain's motion was untimely and that he did not establish exceptional circumstances. (J.A. at 150-51.)

Hussain appealed the immigration judge's decision to the Board. (J.A. at 174-76.) While the appeal was pending, Hussain filed a motion to remand his case to the immigration judge. (J.A. at 186.) According to Hussain, his new wife had filed an Immigrant Petition on his behalf. (J.A. at 187.) Hussain argued that his circumstances had materially changed and that he was entitled to a rehearing before the immigration judge. *Id.* Hussain attached several documents to his motion to remand, claiming that he was eligible for immediate and comprehensive relief. (J.A. at 186-238.) The Government neglected to file a response to the motion to remand.

The Board found that Hussain's motion to reopen the immigration judge's order of removal entered in absentia was untimely. (J.A. at 259-60.) The Board further noted that Hussain "is also seeking to reopen proceedings to apply for adjustment of status. An alien is not required to rescind his or her deportation order under [the applicable] Act if he or she is pursuing an application for new relief, and provided there is no evidence that the respondent received the required warnings" for failing to appear. *Id.* (citing *Matter of M-S*, 22 I. & N. Dec. 349 (BIA 1998)). The Board found that motion to be untimely, as well. *Id.* at 260. This petition followed.

## II.

Hussain limits his petition for review to challenging the disposition of the motion to remand. We review the denial of a motion to remand for abuse of discretion. *Obioha v. Gonzales*, 431 F.3d 400, 408 (4th Cir. 2005). The Board abuses its discretion when it "fails to offer a reasoned explanation for its decision, distorts or disregards important aspects of the alien's claim." *Malhi v. INS*, 336 F.3d 989, 993 (9th Cir. 2003) (internal quotation marks and citation omitted).

## A.

Hussain argues that the Board erred by failing to mention or address his motion to remand in the order denying relief. The Govern-

ment admits that the Board failed to refer specifically to the motion to remand. The Government contends, however, that the Board referenced the motion to remand when it discussed Hussain's motion to reopen to apply for adjustment of status.

Because Hussain's motion was filed while the appeal was pending, it is properly classified as a motion to remand. *See* 8 C.F.R. § 1003.2(c)(4)(2005). Thus, Hussain is correct in his contention that the Board failed to dispose specifically of the motion to remand.

The record supports the finding that the Board's reference to the motion to reopen was a reference to the motion Hussain filed before the immigration judge. As noted above, in that motion, Hussain sought reopening as a result of exceptional circumstances causing him to be absent from his hearing, an adjustment of status because of a labor certification filed by his attorney and relief under the Violence Against Women Act. (J.A. at 247-55.)

The Board's order initially referenced Hussain's argument that exceptional circumstances were present when he missed his immigration hearing. (J.A. at 259.) As observed above, however, the Board found the motion for relief as to that request to be untimely. *Id.* It continued by stating that Hussain "is also seeking to reopen proceedings to apply for adjustment of status."[1] *Id.* The Board also noted that an alien is not obligated under some circumstances to have a deportation order rescinded if the alien is pursuing an application for new relief. (J.A. at 260 (citing *Matter of M-S*, 22 I. & N. Dec. 349).)

In *Matter of M-S*, the petitioner sought to have the immigration judge rescind the order of removal so as to apply for adjustment of status. *Id.* The Board held that in some circumstances the order does not have to be rescinded. *Id.* at 356.

---

[1]The Government claims that the Board's use of the word "also" implies it was moving from the appeal to the motion to remand. It is equally possible, however, that the use of the term "also" meant that the Board was moving from considering reopening the in absentia order to reopening to consider the labor certification.

In the instant case, after noting that an order does not have to be rescinded in certain cases, the Board continued by finding that, despite the fact that rescission is sometimes unnecessary, Hussain's motion to reopen to seek new relief was untimely.[2] The Board's discussion of whether rescission is essential relates to Hussain's motion to reopen, in which he did seek rescission, rather than the motion to remand, in which he did not specifically seek rescission. Therefore, based on the case citation in the order, the fact that the Board referred to the motion as one to reopen, instead of referring to a motion for remand, the discussion of rescission, and the fact that the motion to reopen filed before the immigration judge sought an adjustment of status, we are convinced that the Board was not referring to the motion to remand when it disposed of the "motion to reopen."

In addition, the Government did not oppose Hussain's motion to remand. Pursuant to 8 C.F.R. § 1003.2(g)(3), if the Government does not file a response to a motion, it is deemed unopposed. An unopposed motion to remand for adjustment of status may be remanded. *In re Erales*, A75-512-988, 2005 WL 649163 (BIA Jan 11, 2005) (unpublished); *In re Marquez-Ledezma*, No. A78-153-433, 2004 WL 2418722 (BIA Oct. 8, 2004) (unpublished). The Board's failure to make reference to the Government's lack of a response lends support to Hussain's claim that the Board neglected to consider the motion.

Moreover, the finding that the motion was untimely apparently refers to Hussain's motion to reopen filed before the immigration judge. That motion was filed more than two years after the immigration judge's decision. A motion to reopen must be filed no later than ninety days after the date of the administrative decision at issue. 8 C.F.R. § 1003.2(c)(2). The parties have not submitted, and we have not found, either a comparable regulation for motions to remand or an instance in which a motion to remand, filed while an appeal was

---

[2]The Government contends that the reference to "new relief" implies that the Board was referring to the adjustment of status based upon his marriage. However, Hussain also sought "new relief" before the immigration judge when he sought an adjustment of status as a result of a labor certification. There is nothing in the record to support the Government's claim as to what was intended by the Board's reference to new relief.

pending, was denied because it was untimely. Accordingly, we find that the Board's order neglected to properly dispose of the motion to remand.

## B.

The Government contends that if the Board failed to consider Hussain's motion to remand, this Court should, nevertheless, deny the petition for review. According to the Government, Hussain is statutorily prohibited from receiving adjustment of status because he entered the country illegally. We agree.

The Attorney General, in his discretion, may adjust the status of an alien to that of a lawful permanent resident if the alien "was inspected and admitted or paroled into the United States . . ." 8 U.S.C.A. § 1255(a) (2000); *Jean v. Gonzales*, 435 F.3d 475, 477 (4th Cir. 2006). Generally, an alien present in the United States without being admitted or paroled is inadmissible. 8 U.S.C.A. § 1182(a)(6) (2000).

The record supports the finding that Hussain was not inspected or paroled into the United States. (J.A. at 5.) In fact, in his documentation to adjust his status, Hussain admitted that he entered the United States without inspection. (J.A. at 122, 125.)

A motion to reopen proceedings "for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). To establish a prima facie case for adjustment of status, Hussain must demonstrate the following: (1) he has applied for an adjustment of status; (2) he is eligible to receive an immigrant visa and is admissible to the United States; and (3) an immigrant visa was immediately available to him at the time his application was filed. 8 U.S.C. § 1255(a) (2000); *Onyeme v. INS*, 146 F.3d 227, 231 (4th Cir. 1998). Hussain has failed to make a prima facie case in his motion to remand because he failed to establish that he was admissible. *See* 8 U.S.C. § 1182(a)(6). Accordingly, we hold that Hussain is ineligible for the relief that he seeks.

In matters such as this, the Court "is not *generally* empowered to conduct a de novo inquiry into the matter being reviewed and to reach

its own conclusions based on such an inquiry. Rather, the proper course, *except in rare circumstances*, is to remand to the agency for additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16-18 (2002) (holding that the federal appellate court should have remanded the case to the Board to make a *factual* determination as to whether political conditions had improved in Guatemala to the extent that political persecution was no longer likely) (internal citations and quotation marks omitted) (emphasis added). Moreover, in *Gonzales v. Thomas*, ___U.S. __, 126 S. Ct. 1613 (2006), the Supreme Court reiterated the holding in *Ventura*, stating that no special circumstances in *Thomas* permitted the appellate court to consider a *factual* issue in the first instance.

> The matter requires *determining the facts* and *deciding whether the facts* as found fall within a statutory term. And as we said in *Ventura*:
>
> The agency can bring its expertise to bear upon the matter; it can *evaluate the evidence*; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later determine whether its decision exceeds the leeway that the law provides.
>
> We can find no special circumstance here that might have justified the Ninth Circuit's determination of the matter in the first instance. Thus, as in *Ventura*, the Court of Appeals should have applied the ordinary remand rule.

*Id.* at 1615 (internal citations and quotation marks omitted) (emphasis added).

Thus, both *Ventura* and *Thomas* concerned, in part, the appellate court's authority to review in the first instance *factual* issues not considered by the Board. The Supreme Court did not speak to whether the appellate courts have authority to review in the first instance statutory issues, although it did state the appellate court's authority was limited to *rare circumstances*.[3]

---

[3]This Court has also noted that a remand is necessary for the Board to make an initial determination on a *factual* issue if it is necessary to dispose of the case. *Li v. Gonzales*, 405 F.3d 171, 178 (4th Cir. 2005).

Moreover, as aptly observed by the Fifth Circuit, the language in *Ventura* is precatory, not mandatory, and, thus, remand is not always necessary. *Zhao v. Gonzales*, 404 F.3d 295, 311 (5th Cir. 2005) ("[A]lthough the language in *Ventura* is strong, it remains precatory. The Court could have worded its holding categorically, and its failure to do so must be a conscious decision.")

Simply stated, Hussain is ineligible for the relief he seeks because he is unable to establish a prima facie case for the adjustment of his status. This is a legal, not a factual, conclusion.[4] As such, to remand this matter to the Board for further consideration would serve no useful purpose. *Zhong v. U.S. Dep't of Justice*, 461 F.3d 101, 113 (2d Cir. 2006) (stating that an agency error does not warrant remand when it is clear from the record "that the same decision is inevitable on remand, or, in short, whenever the reviewing panel is confident that the agency would reach the same result upon a reconsideration cleansed of errors") (citation omitted).

Because the result of a remand to the Board is a foregone conclusion such that remand would amount to nothing more than a mere formality, we find that the *Ventura* "rare circumstances" exception applies.[5] That is, like the *Zhao* court, "[w]e cautiously conclude that this case exhibits the narrow set of circumstances that requires no remand." *Zhao*, 404 F.3d at 311 (footnote omitted).[6]

---

[4]We review questions of law de novo. *Dekoladenu v. Gonzales*, 459 F.3d 500, 503 (4th Cir. 2006).

[5]The dissent observes that we neglected to cite any case in which a federal court of appeals has refused to remand a case to the Board under similar circumstances subsequent to *Ventura* and *Thomas*, but then fails to reference any case similar to the one at bar in which an appellate court in fact remanded the case. We interpret the absence of similar cases as further support for our opinion that this is the sort of case that triggers the "rare circumstances" exception found in *Ventura*.

[6]"A reviewing court can no doubt find some deficiency in the process afforded, in the findings of fact, or the legal analysis in nearly any agency adjudication. The courts . . . distinguish trivial or harmless error from error requiring reversal or remand for further consideration." John W. Guendelsberger, "Judicial Deference to Agency Decisions in Removal Proceedings in Light of INS v. Ventura", 18 Geo. Immigr. L.J. 605, 638 (2004).

Finally, there is a "strong public interest in bringing litigation to a close as promptly as is consistent with" a fair opportunity to present claims. *INS v. Abudu*, 485 U.S. 94, 105, 107 (1988). This is particularly true in cases such as this, "where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992).

The significant likelihood is that any further decision by the Board on this issue that is unfavorable to Hussain will be brought to this Court, again. The determination that we have made today is inevitable on remand. Hence, there is no legal reason for further delay.

### III.

Accordingly, we deny Hussain's petition for review.

*PETITION DENIED*

HAMILTON, Senior Circuit Judge, dissenting:

I have two main points of disagreement with the majority opinion. First, I disagree with the majority opinion's failure to remand this case to the Board for issuance of a clarifying order. In my view, the Board's November 14, 2005 decision (the Board's Final Decision) is sufficiently ambiguous regarding whether the Board ruled upon Hussain's July 19, 2005 motion to remand (Hussain's Motion to Remand) that granting Hussain's petition for review and remanding the case to the Board with instructions to issue a clarifying order is required and mandated. Second, assuming *arguendo*, that the Board did not rule on Hussain's Motion to Remand as the majority opinion concludes, I disagree with the majority opinion's decision to address such motion on the merits in the first instance. In so addressing, the majority opinion oversteps our review authority. Accordingly, I respectfully dissent.

### I.

Before addressing in detail my points of disagreement with the majority opinion, the Board deserves to be rebuked for issuing a final

decision in which we, as the reviewing court, cannot readily discern whether the Board even ruled upon a particular motion pending before it. Immigration law, in and of itself, is complicated and confusing enough that we should not be thrown into debate at the federal appellate level regarding what action the Board actually took.

Turning to my first main point of disagreement with the majority opinion, a careful reading of the record and the Board's Final Decision shows that the majority opinion's conclusion that the Board failed to dispose of Hussain's Motion to Remand is just a reasoned guess or mere speculation. The truth is that we really do not know whether the Board intended to dispose of Hussain's Motion to Remand in its Final Decision. Indeed, the government candidly conceded at oral argument that the Board's Final Decision is ambiguous on the point.

I disagree with the majority opinion's choice to discern from the indiscernible whether the Board ruled upon Hussain's Motion to Remand. The prudent course, in this wholly ambiguous situation with which we find ourselves confronted, is to remand the case to the Board with instructions for the Board to issue a clarifying order. Specifically, I would instruct the Board to clarify whether it had ruled upon Hussain's Motion to Remand in its Final Decision in denying the second-mentioned motion to reopen. If it had so ruled, I would instruct the Board to clarify its reason or reasons for so ruling. If it had not so ruled, I would instruct the Board to rule on the motion and to express its reason or reasons for so ruling.

II.

My second main point of disagreement with the majority opinion concerns the majority opinion's decision to address the merits of Hussain's Motion to Remand. After the majority opinion concludes that the Board did not rule on Hussain's Motion to Remand, the majority opinion takes the extraordinary step of addressing such motion on the merits in the first instance. According to the majority opinion, remand to the Board for a ruling in the first instance would serve no useful purpose because, based upon the record, Hussain is unable to establish a *prima facie* case for adjustment of status. Notably, the majority opinion takes pains to stress that its conclusion that Hussain is unable

to establish a *prima facie* case for adjustment of status "is a legal, not a factual, conclusion." *Ante* at 8.

Significantly, the majority opinion's decision to address the merits of Hussain's Motion to Remand in the first instance violates the ordinary remand rule as recently reiterated and applied in the Supreme Court's immigration decisions in *INS v. Ventura*, 537 U.S. 12 (2002) (*per curiam*) and *Gonzales v. Thomas*, 126 S. Ct. 1613 (2006) (*per curiam*).

In *Ventura*, the Ninth Circuit had addressed and rejected an argument by the government that political conditions in Guatemala had improved to the point that political persecution was no longer likely in Guatemala. *Ventura*, 537 U.S. at 13. The Board had not addressed the issue. *Id.* The Supreme Court reversed the Ninth Circuit insofar as it had denied remand to the Board. In so reversing, the Supreme Court applied the ordinary remand rule, which rule provides that, in reviewing the decision of an administrative agency, "[a] court of appeals is not generally empowered to conduct a *de novo* inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry. Rather, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Id.* at 16 (internal citations and quotation marks omitted). As rationale for the ordinary remand rule, the Court explained that the administrative "agency can bring its expertise to bear upon the matter; it can evaluate the evidence; it can make an initial determination; and, in doing so, it can, through informed discussion and analysis, help a court later to determine whether its decision exceeds the leeway that the law provides." *Id.* at 17. The Court held that the Ninth Circuit should have applied the ordinary remand rule, and therefore, had erred by deciding the "changed circumstances" issue "without giving the [Board] the opportunity to address the matter in the first instance." *Id.* at 17.

In *Thomas*, the Supreme Court addressed whether the Ninth Circuit had erred in considering, in the first instance, whether a given group of persons fell within the statutory term "particular social group" under § 101(a)(42)(A) of the Immigration and Nationality Act (INA), 8 U.S.C. § 1101(a)(42)(A), when the Board had not formally considered such question. *Thomas*, 126 S. Ct. at 1614. Applying the ordi-

nary remand rule, the Court held that the Ninth Circuit had again usurped the relevant administrative agency's role by making basic asylum eligibility decisions. *Thomas*, 126 S. Ct. at 1615. The Board had yet to consider whether "Boss Ronnie's family presents the kind of 'kinship ties' that constitute a 'particular social group,'" which "matter," the Court stated, "requires determining the facts and deciding whether the facts as found fall within a statutory term." *Id.* The Supreme Court, therefore, vacated and remanded, holding that, absent "special circumstances" not present in that case, the relevant administrative agency must first opine on issues about which it has expertise prior to appellate review. *Id.*

In addressing Hussain's Motion to Remand on the merits in the first instance, the majority opinion attempts to rely upon a distinction between factual and legal issues. The majority opinion states that in discussing the ordinary remand rule in *Ventura* and *Thomas*, "[t]he Supreme Court did not speak to whether the [federal] appellate courts have authority to review in the first instance statutory issues . . . ." *Ante* at 7. Therefore, the majority opinion reasons, *Ventura* and *Thomas* present no bar to our court, in the first instance, denying Hussain's Motion to Remand based upon a legal ruling. *Ante* at 7-8.

In my view, the majority opinion misreads *Ventura* and *Thomas*. The issues remanded in *Ventura* and *Thomas* both involved factual and legal aspects. In *Ventura*, the "changed circumstances" issue called not only for the Board's review of evidence in the record, but for the Board's application of the law to the facts, *Ventura*, 537 U.S. at 16-17. Such application of the law to the facts brings into play the Board's conferred interpretative expertise in the field of immigration law, *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999) (holding that *Chevron* deference applies to the Board based on the statutory allocation of power laid out by Congress in the INA); *see also* 8 C.F.R. § 1003.1(d) ("[T]he Board, through precedent decisions, shall provide clear and uniform guidance to the Service, the immigration judges, and the general public on the proper interpretation and administration of the Act and its implementing regulations."). Similarly, the issues remanded in *Thomas* called for the Board's review of the evidence in the record as well as the Board's exercise of its conferred interpretive expertise in the field of immigration law. *Thomas*, 126 S. Ct. at 1615 ("The agency has not yet considered whether Boss Ronnie's family

presents the kind of 'kinship ties' that constitute a 'particular social group.' The matter requires determining the facts and deciding whether the facts as found fall within a statutory term.").

Here, by addressing the merits of Hussain's Motion to Remand in the first instance, the majority opinion, just as the Ninth Circuit erroneously did in *Ventura* and *Thomas*, usurps the authority of the Board to rule on an issue of immigration law in the first instance, *i.e.*, whether Hussain is eligible under the INA for the relief he seeks. Moreover, as a plain reading of the majority opinion makes clear, Hussain's Motion to Remand requires review of the evidentiary record in this case and resolution of factual issues, such as whether Hussain was admitted into the United States. *Ante* at 8. There is nothing in the circumstances of the instant case which suggest that this case presents "rare circumstances" justifying exception from the ordinary remand rule. *Ventura*, 537 U.S. at 16. For example, Hussain has not expressly conceded on appeal before us that he is ineligible for the relief he seeks in his Motion to Remand.

Perhaps the most troubling aspect of the majority opinion is that one cannot tell from reading it upon what legal authority the majority opinion based its refusal to remand this case to the Board. In fact, the majority opinion does not cite a single case in which a federal court of appeals has refused to remand a case to the Board under similar circumstances post-*Ventura* and *Thomas*.

To summarize, the Supreme Court made quite clear in *Ventura* and *Thomas* that a federal appellate court should remand legal and factual issues of immigration law not previously addressed by the Board to the Board for resolution in the first instance except in "rare circumstances . . . ." *Ventura*, 537 U.S. at 16. The majority opinion's decision not to remand this case to the Board for the Board to rule on Hussain's Motion to Remand in the first instance creates an exception to the ordinary remand rule that swallows the rule.

### III.

In conclusion, I disagree with the majority opinion's disposition in this case. Instead of denying Hussain's petition for review as the majority opinion does, I would grant the petition for review and

remand the case to the Board for issuance of a clarifying order as detailed above. Accordingly, I dissent.